UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT MATHIES,<br><br>                      Plaintiff,<br><br>v.<br><br>LG ENERGY SOLUTION<br>MICHIGAN, INC.,<br>                      Defendant. | Case No. 24-12872<br>Honorable Shalina D. Kumar<br>Magistrate Judge Anthony P. Patti |

**ORDER DENYING JOINT MOTION FOR APPROVAL OF SETTLEMENT
(ECF NO. 9)**

## I.    Introduction

Plaintiff Robert Mathies ("Mathies"), on behalf of himself and others similarly situated, sued defendant LG Energy Solution Michigan, Inc. ("LGESM") alleging that it violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), by failing to properly calculate its employees' regular rate of pay for purposes of determining proper overtime rates under FLSA. ECF No. 1. LGESM denied Mathies' claims and denied violating any wage and hour laws.

The parties engaged in settlement negotiations and ultimately reached an agreement to settle the case. ECF No. 9-1, PageID.75. The

Page **1** of **17**

parties now move this Court to approve their proposed settlement agreement, notice of settlement of collective action, and consent form. ECF No. 9. For the reasons discussed below, the Court denies the parties' motion without prejudice.

## II.     Terms of the Proposed Settlement

The parties' proposed settlement calls for LGESM to pay a maximum of $550,000 to settle the collective claims, which includes all wage and hour claims, attorneys' fees and costs, and a service award for Mathies. *See* ECF No. 9-1, PageID.78. Plaintiff's counsel's fees will equal 33.3% of the maximum settlement amount, or $183,333.33, and plaintiff's cost reimbursement is to be paid out of the gross settlement amount and shall not exceed $7,500. *Id.* Additionally, the Settlement Administrator costs shall not exceed $7,500, and $5,000 will be allocated to Mathies as a service award. *See id.* at PageID.88; PageID.85. The remaining amount is to be divided to any plaintiff who opts into the collective action on a pro rata basis based on the number of workweeks each employee worked during the relevant time period. *See id.* at PageID.81. Any undistributed funds are to revert to LGESM. *See id.*

The proposed settlement agreement purports to settle and release the claims of all collective plaintiffs, but Mathies is the only plaintiff currently. Other LGESM employees or former employees have yet to be noticed, and none have opted into the action. *See* ECF No. 9. Indeed, the proposed settlement calls for a notice explaining the nature, terms, and scope of the settlement and how to opt in to be sent to potential plaintiffs—none of whom have been identified—only after the Court approves the proposed settlement. *See* ECF No. 9-1, PageID.98.

The proposed settlement provides that the notice should be mailed, along with a consent form, to the currently unidentified potential plaintiffs within 10 days of the Court's order approving the settlement. ECF No. 9-1, PageID.82. The notice informs the potential plaintiffs that returning the consent form operates not only as consent to join the case, but also to designate Mathies' attorneys as their legal counsel. ECF No. 9-1, PageID.103. Although not included in the notice, the settlement agreement states the potential plaintiffs will then have 45 days from the mailing date to submit their completed and signed consent forms. ECF No. 9-1, PageID.81, 82. Remarkably, neither the notice nor the settlement agreement specifies where these forms should be sent, and the proposed

settlement agreement does not require these consent forms be filed with the Court. Notably, the proposed agreement calls for the parties to dismiss this action within 10 days of the Court's order approving the settlement. *Id*. at PageID.93.

### III. Discussion

### A.

Section 216(b) of FLSA permits an employee to recover unpaid overtime compensation by suing an employer on behalf of himself and other employees "similarly situated." 29 U.S.C. § 216(b). When an employee sues his employer in a representative capacity under § 216(b), "similarly situated" plaintiffs choose whether to "opt into" the suit, which is known as a "collective action." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). An FLSA collective action must meet two requirements: (1) the plaintiffs must be "similarly situated"; and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer*, 454 F.3d at 546 (citing 29 U.S.C. § 216(b) and *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 167–68

(1989)). District courts have broad discretion in implementing procedures to ensure that these requirements are met. *See Hoffmann-La Roche*, 493 U.S. at 169.

"To satisfy the 'opt-in' requirement of § 216(b), plaintiffs who seek to be parties must file written consents with the court." *O'Bryant v. ABC Phones of N. Carolina, Inc. (O'Bryant I)*, 2020 WL 4493157, at *6 (W.D. Tenn. Aug. 4, 2020) (citing 29 U.S.C. § 216(b)). Unless a plaintiff has opted in by filing a written consent with the court, he cannot give his consent to settle, nor can a named plaintiff in a collective action "settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff – as a party to the case – is required." *See id*. (quotation omitted).

**B.**

FLSA's overtime compensation provisions are "mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer v. Safelife Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citations omitted). Back wages under FLSA can be settled or compromised with the supervision of the Department of Labor, or "when employees bring a private action for back wages under…FLSA, and present to the district

court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *O'Bryant I*, 2020 WL 4493157, at *6 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)).[1]

When parties submit a proposed FLSA settlement for a court's review, the court must review the proposed settlement to ensure that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's*, 679 F.2d at 1355; *see also Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (affirming approval of a settlement of FLSA claims where the district court applied the *Lynn's* test). "A bona fide dispute exists when there are legitimate questions about the existence and extent of defendant's FLSA liability." *O'Bryant I*, 2020 WL 4493157, at *7 (cleaned up).

The court must also find that the settlement is fair and reasonable. *Lynn's*, 679 F.2d at 1353. The Sixth Circuit has not directly stated the

---

[1] Although the circuits are split over whether judicial approval is necessary for all FLSA settlements, because the Sixth Circuit has not directly addressed this split, some districts within this circuit have followed the growing view that court approval is not necessary. But others, including this district, continue to follow the majority position that judicial approval is required for FLSA collective action settlements brought under 29 U.S.C. § 216(b). *See O'Bryant I*, 2020 WL 4493157, at *6, n.5.

factors courts are to consider in deciding whether an FLSA collective action settlement is fair and reasonable, but, in analyzing hybrid class action-collective action FLSA settlements, this Circuit considers the following factors: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. *O'Bryant v. ABC Phones of N. Carolina, Inc. (O'Bryant II)*, 2020 WL 7634780, *7 (W.D. Tenn Dec. 22, 2020) (citing *Deja Vu*, 925 F.3d at 894-95 and *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp. ("UAW"),* 497 F.3d 615, 631 (6th Cir. 2007)). District courts in this Circuit have applied these seven factors in analyzing the fairness and reasonableness of collective action settlements. *Id*. at *8; see, e.g., Hawkins v. Accurate Nursing Servs., Inc.*, 2020 WL 1031530, *1 (N.D. Ohio Mar. 3, 2020); *Robinson v. Sheppard Performance Grp., Inc.*, 2020 WL 619603, *2 (E.D. Mich. Feb. 10, 2020); *Osman v. Grube, Inc.*, 2018 WL 2095172, *1 (N.D. Ohio May 4, 2018). Courts in this district have also considered the following factors to assess the fairness and

reasonableness of a proposed settlement: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Farkas v. Boschert*, 2018 WL 3100905, at *1-2 (E.D. Mich. June 25, 2018). The Court need only consider the factors relevant to this settlement. *Snook v. Valley OB-GYN Clinic, P.C.*, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015) ("A district court may choose to consider only the factors that are relevant to the settlement at hand.").

A court "must not simply rubber-stamp settlement agreements as approved." *O'Bryant II*, 2020 WL 7634780, at *8 (quoting *Snook*, 2015 WL 144400, at *1) (internal marks omitted); *see also Williams v. Alimar Sec., Inc.*, 2016 WL 6405798, at *4 (E.D. Mich. Oct. 31, 2016). "Parties to a settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *O'Bryant II*, 2020 WL 7634780, at *8 (quoting *UAW*, 497 F.3d at 635) (internal marks omitted).

"A court does not have the authority to delete, modify, or substitute certain provisions of a settlement agreement, but rather, the settlement agreement 'must stand or fall in its entirety.'" *Id*. (quoting *Smothers v. NorthStar Alarm Servs., LLC*, 2019 WL 280294, at *9 (E.D. Cal. Jan. 22, 2019)). In sum, "a court will grant a motion for settlement approval in an FLSA collective action only after finding that: (1) the opt-in plaintiffs are 'similarly situated'; (2) the opt-in plaintiffs have properly filed written consents with the court; and (3) the settlement is 'a fair and reasonable resolution of a bona fide dispute.'" *Id*. (quoting 29 U.S.C. § 216(b); *Comer*, 454 F.3d at 546; *Lynn's*, 679 F.2d at 1353).

### C.

When considering a motion to approve the settlement of a FLSA action, the court must first certify the collective for purpose of settlement. *O'Bryant I*, 2020 WL 4493157, at *9. Although certification that plaintiffs are similarly situated is normally a two-step process, district courts in this circuit have found opt-in plaintiffs similarly situated at the same time they have approved a settlement. *Id*. (citing *Osman*, 2018 WL 2095172, at *1). The parties ask the Court to conduct such a one-step approval analysis here. However, courts have determined a two-step process is more

prudent if a "one-step process would be unduly influential in causing members to opt-in without considering all the risks and benefits," particularly where, as here, the opt-in plaintiffs are not yet before the Court. *See, e.g., id.; Lopez v. Silfex, Inc.*, 2021 WL 5795280, *11 (S.D. Ohio Dec. 3, 2021); *O'Bryant II*, 2020 WL 7634780, at *7 ("Where appropriate, the court preliminarily approves a proposed FLSA collective action settlement, authorizes a notice of settlement, and schedules a fairness hearing."); *Coleman v. Amazon.com, Inc. (Coleman II)*, 2025 WL 5821495, *2 (W.D. Tenn. Feb. 21, 2025) (after court denied initial motion to approve settlement, parties renegotiated to establish a two-step approval process—parties were to seek preliminary approval of the settlement, after which notice would be sent to potential opt-in plaintiffs, and only once all opt-in plaintiffs joined the collective would the court entertain a motion for final approval of settlement).

### D.

The one-step settlement procedure advanced by the parties in their joint motion includes multiple flaws fatal to its approval. First, the proposed settlement does not provide for the filing of individual written consents with the Court, which is an unambiguous and unequivocal

statutory requirement. *See* ECF No. 9-1; *see also O'Bryant I*, 2020 WL 4493157, at *6. This failure alone precludes approval of the proposed settlement.

But other defects also thwart approval. The proposed settlement dictates that the parties will dismiss the action with prejudice within 10 days of the Court's approval of the settlement agreement. ECF No. 9-1, PageID.93. However, the Third-Party Administrator has 10 days after the Court approves the settlement to mail a notice of settlement and claim form to unidentified eligible settlement participants, who, in turn, have 45 days to submit their completed and signed claim form. *See id.* at PageID.81-82. Hence, if the Court were to grant the parties' motion for settlement approval, the named plaintiff's legally cognizable interest in the outcome might terminate before any other plaintiffs have opted into the suit. *See O'Byrant I*, 2020 WL 4493157, at *11 (citations omitted). In that event, there would no longer be a live case or controversy, and the case would be moot. *See id.* at *12 (collecting cases).

In addition to these "justiciability issues," the proposed settlement's structure "raises serious jurisdictional issues" – issues which have prompted other courts to reject similarly structured settlements. *See, e.g.,*

*id.*; *Coleman v. Amazon.com, Inc. (Coleman I)*, 2023 WL 4408713, *3 (W.D. Tenn. July 7, 2023). "The structure of the collective action provision of the FLSA –including the requirement that the opt-ins be filed –is to ensure the presence of plaintiffs before the court." *O'Bryant I*, 2020 WL 4493157 at *11 (internal quotation and marks omitted). "Unlike in a class action, where the rights of unnamed parties are adjudicated in their absence (or via representative), the opposite is true in a collective action." *Id*. (quotations omitted). "The benefits of § 216(b) 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Id*. (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

Here, the parties ask the Court to approve a settlement on behalf of individuals not before the Court and to dismiss their claims with prejudice before they have appeared or had the opportunity to be heard. *Coleman I* noted that "[i]f the [c]ourt approved the settlement and dismissed the case at the same time, it would effectively be allowing any opt-in plaintiffs to opt into a litigation that has already been dismissed." 2023 WL 4408713, at *3. Although courts routinely retain jurisdiction to enforce the terms of a settlement agreement, here "the [c]ourt would not simply be retaining

jurisdiction over the parties to a settlement, but would effectively be asserting jurisdiction over new parties and their claims." *Id.* Inviting would-be plaintiffs to join a dismissed and moot action is not an "orderly, sensible, or proper way to resolve this case." *O'Bryant I*, 2020 WL 4493157, at *11 (quoting *Hoffman-La Roche*, 493 U.S. at 170).

Additionally, requiring the potential plaintiffs to designate Mathies' counsel as their attorney, as the proposed consent form does here, is problematic. *See* ECF No. 9-1, PageID.103. A joining plaintiff need not consent to representation by the named plaintiff's counsel but may instead choose his or her own counsel. *See Lott v. Recker Consulting, LLC*, 2024 WL 4694099, *12 (S.D. Ohio Nov. 6, 2024) (named plaintiff must include language in the proposed notice and consent "specifically informing potential plaintiffs of their right not only to opt-in, but also to choose their own counsel").

The proposed settlement makes it difficult to assess whether it is a fair and reasonable resolution in other ways, as well. First, the settlement provides for a $5,000 service award to Mathies, the only named plaintiff. "[T]he Sixth Circuit has instructed district courts to scrutinize service awards closely. Courts may 'sensibly fear that incentive awards may lead

named plaintiffs…to compromise the interest of the class for personal gain.'" *Coleman I*, 2020 WL 4408713 at *4 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)); *see also Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.*), 724 F.3d 714, 722 (6th Cir. 2013) ("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design."). Indeed, "[i]ncentive payments should be subject to particularly close scrutiny when the amount of the award significantly exceeds the relief provided to the collective or class…." *Coleman I*, 2020 WL 4408713 at *4. Here, the proposed settlement was reached early in the case, before any formal discovery took place. Without a factual basis regarding the approximate number of hours Mathies contributed to aiding the collective's claims, the nature of his assistance, and counsel's evaluation of the value of his efforts to the collective, the Court cannot evaluate the reasonableness of the $5,000 payment to Mathies, especially when considering that 33.3% of the total settlement amount will be paid to Mathies' attorney and the number of potential opt-in plaintiffs has yet to be identified. *See Coleman I*, 2023 WL 4408713 at *4.

Likewise, the Court lacks information necessary to determine the

reasonableness of the 33.3% contingency fee for Mathies' counsel. "In determining the reasonableness of an attorneys' fee, the Court considers such factors as: (1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved." *O'Bryant I*, 2020 WL 4493157 at *15. Mathies' counsel does not provide the number of hours worked nor the hourly rates charged for that work, so the Court cannot assess the proposed attorneys' fee against the lodestar value for its work. Nor can the court assess the value of the benefit rendered for the class without knowing the full amount the potential plaintiffs could recover. *See id*. at *13 (citing *Williams*, 2016 WL 6405798, at *4).

Additionally, a court must carefully review the award of attorneys' fees for "subtle signs" that counsel have allowed pursuit of their own self-interests and that of the named plaintiff "to infect the negotiations." *Id*., at *17 (quotation omitted). Those "subtle signs" may include a disproportionate award to counsel and arrangements where fees not

awarded revert to defendant rather than the collective fund. *Id*. The attorneys' fee in the proposed settlement displays at least one of these "subtle signs."[2] Because the Court cannot assess the reasonableness of the proposed attorney fees with the information before it, and recognizes at least one sign that the fees requested here might not be reasonable, approval of the proposed settlement including these fees is not appropriate. *See id; Coleman I,* 2023 WL 4408713 at *4.

  Finally, courts are wary of settlement agreements that would return all unclaimed settlement funds to the defendant, as the proposed settlement does here. *See O'Bryant I*, 2020 WL 4493157, at *17 (citing *Smothers*, 2019 WL 280294, at *13). Indeed, reversionary provisions governing unclaimed settlement funds are strongly disfavored, requiring parties to satisfactorily explain why the funds should revert to defendant. The parties do not explain why the unclaimed funds should revert to

---

[2] The settlement agreement provides that "[i]f the Court rules that any amount requested by Plaintiffs' Counsel for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be deemed to be Plaintiffs' Counsel's fees and costs for purposes of this Settlement Agreement and the remaining amount will be *retained by Defendant.*" ECF No. 9-1, PageID.84. (emphasis added)

Page **16** of **17**

LGESM.³ Accordingly, the inclusion of the reversionary provisions "suggests the potential unreasonableness" of the proposed settlement agreement. *Id.*

## IV. Conclusion

For these reasons, the parties' joint motion for approval of settlement and to dismiss the case (ECF No. 9) is **DENIED WITHOUT PREJUDICE**. The parties may file an amended motion for approval of a settlement revised to rectify the identified defects.

**IT IS SO ORDERED.**

Dated: November 5, 2025

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

---

³ LGESM might justify the reversion of settlement funds by arguing that, because potential plaintiffs who do not opt in, or the opt-in plaintiffs who fail to negotiate their payment, do not release their claims against LGESM under the terms of the proposed settlement agreement, LGESM should rightfully retain any unpaid settlement funds to pay later claims asserted by these potential plaintiffs. But the Court would not find such an explanation satisfactory under the circumstances. The terms of the proposed settlement agreement also call for the dismissal of the case with prejudice long before the expiration of the time for an opt-in plaintiff to negotiate his or her payment. Thus, a party who opted into the suit before it was dismissed, but who ultimately failed to cash his settlement check, could be foreclosed from collecting a recovery from LGESM despite the reversion of the funds for that recovery to LGESM.